IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01984-RBJ

GLENN AUSMUS,
RUSSELL L. AUSMUS,
DWAYNE FRITZLER,
SHIRLEY FRITZLER,
BLAKE GOURLEY,
FARA GOURLEY,
DEAN JAGERS, and
JEFF SELF,

       Plaintiffs,

v.

SONNY PERDUE,* Secretary of the United States Department of Agriculture,
STEVEN C. SILVERMAN, Director, National Appeals Division, and
HEATHER MANZANO,** Acting Administrator of the Risk Management Agency and Manager of the Federal Crop Insurance Corporation,

       Defendants.

---

**ORDER REVERSING AND REMANDING USDA'S DECISION**

---

Pursuant to 7 U.S.C. § 6999, 7 C.F.R. § 11.13, and Chapter 7 of Title 5 of the United States Code, Plaintiffs seek judicial review of a final decision of the National Appeals Division

---

* In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Sonny Perdue is substituted for Thomas Vilsack as the Secretary of Agriculture.

** Heather Manzano is similarly substituted for Brandon Willis as the Acting Administrator of the Risk Management Agency and Manager of the Federal Crop Insurance Corporation. Fed. R. Civ. P. 25(d).

1

("NAD"), a division of the United States Department of Agriculture. ECF No. 1 at 3. After considering the arguments, applicable law, and administrative record, the Court reverses the final decision of NAD for the reasons stated herein.

## BACKGROUND

The factual background is not disputed. Plaintiffs are farmers who produce winter wheat in Baca County, Colorado. ECF No. 1 at ¶¶ 1–8. They seek judicial review of an adverse decision of the Risk Management Agency, which was subsequently affirmed by NAD. The sole issue in this case is one of statutory interpretation. The Court must determine whether NAD properly determined that the Actual Production History ("APH") Yield Exclusion set out in 7 U.S.C. § 1508(g)(4)(C) was not immediately available to Plaintiffs upon the passage of the Agricultural Act of 2014 ("Farm Bill"),[1] but was instead subject to the Risk Management Agency's discretion as to the timing of implementation of that amendment.

Section 11009 of the Farm Bill amended subparagraph 1508(g)(4)(C) of the Federal Crop Insurance Act ("FCIA"). ECF No. 36 at ¶ 3. This amended section is commonly known as the APH Yield Exclusion. *Id.* The APH Yield Exclusion was added to the FCIA to give crop producers the opportunity to exclude uncharacteristically bad crop years from the agency's calculation of how much crop insurance coverage they are entitled to. *Id.* at ¶¶ 3–4. Plaintiffs sought to invoke the APH Yield Exclusion in time for their 2015 winter wheat crop, but the agency denied their request. *Id.* at ¶¶ 6–10. Plaintiffs challenge this decision as a wrongful denial of a benefit to which they are entitled under the FCIA. *Id.* Defendants argue that the

---

[1] Pub. L. No. 113–79, 128 Stat. 956, signed into law on February 7, 2014.

agency had not yet fully implemented the APH Yield Exclusion provision, so the denial of Plaintiffs' request to invoke the APH Yield Exclusion was not a denial of any actualized right under the FCIA. ECF No. 37.

Before this Court assesses the merits of these arguments at greater length, some background in the relevant statutes is necessary.

### A. **Federal Crop Insurance Act.**[2]

Congress enacted the FCIA in 1938 to provide crop insurance to farmers because private insurance companies "deemed all-risk crop insurance too great a commercial hazard." *Stewart v. Fed. Crop Ins. Corp.*, No. 4:09-CV-101, 2010 WL 3341863, at *1 (E.D. Tenn. Aug. 25, 2010) (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383 (1947)). In 1980, Congress amended the FCIA to require the Federal Crop Insurance Corporation ("Corporation") generally to reinsure policies issued by private insurance companies rather than to issue direct policies. *Id.*

A common form of crop insurance is called an APH-based policy. A.R. at 971–1019. These policies base their premium, insurance guaranty, and indemnity on a crop producer's average historical yields (APH). *Id.* The APH is the simple average of the producer's actual yields derived from four to ten years' worth of yield data. *See* 7 C.F.R. § 400.55(b). The goal of

---

[2] Plaintiffs' Reply Brief notes that The Honorable Sam R. Cummings of the United States District Court for the Northern District of Texas recently issued a decision regarding the precise issue before this Court. *See Adkins v. Vilsack*, No. 1:15-CV-0169 (N.D. Tex. May 12, 2017) (currently on appeal), a copy of which was provided at ECF No. 38-1. In that order, following a de novo review, the court adopted the findings and conclusions in the Report and Recommendation of United State Magistrate Judge E. Scott Frost, a copy of is found at ECF 38-3. I have found Magistrate Judge Frost's Recommendation, including his discussion of the history of the Federal Crop Insurance Act and the Farm Bill, to be quite helpful in understanding the background that led to the present dispute.

an APH-based policy is to protect a producer against the effect of yield losses resulting from natural causes (e.g., drought) by using that producer's actual production history as a baseline.

The Farm Bill amended FCIA § 1508(g)(4) by adding a new subparagraph (C)—the APH Yield Exclusion.[3] The intended effect of the APH Yield Exclusion is to address the disproportionate deflation of a producer's historical yields resulting from crop years where there were catastrophic droughts or other widespread causes of loss. A.R. at 458. Such crop years result in artificially low insurance guarantees and indemnities. *Id.* By excluding unusually bad years, crop producers no longer have to worry that a natural disaster will reduce their insurance coverage for years to come. *Id.*

The language establishing the APH Yield Exclusion reads:

> (4) **Adjustment in actual production history to establish insurable yields.**
> > (A) **Application**. This paragraph shall apply whenever the corporation uses the actual production records of the producer to establish the producer's actual production history for an agricultural commodity for any of the 2001 and subsequent crop years.
> > . . .
> > (C) **Election To Exclude Certain History**.
> > > (i) **In General**. Notwithstanding paragraph (2), with respect to 1 or more of the crop years used to establish the actual production history of an agricultural commodity of the producer, the producer may elect to exclude any recorded or appraised yield for any crop year in which the per planted acre yield of the agricultural commodity in the county of the producer was at least 50 percent below the simple average of the per planted acre yield of the agricultural commodity in

---

[3] The Farm Bill also amended § 1508(g)(4) by re-designating subparagraph (C) to (D), and adding "or (C)" after "(B)" to the re-designated (D). *See* Pub. L. No. 113–79, sec. 11009, § 508(g), 128 Stat. 956, 957.

> the county during the previous 10 consecutive crop years.
> (ii) **Contiguous Counties**. In any crop year that a producer in a county is eligible to make an election to exclude a yield under clause (i), a producer in a contiguous county is eligible to make such an election.

7 U.S.C. § 1508(g)(4)(A, C).

### B. Procedural History.

Plaintiffs wished to insure their 2015 winter wheat crop. Believing that they were eligible to invoke the APH Yield Exclusion, Plaintiffs gave their crop insurance agents letters electing to exclude all eligible crop years for purposes of calculating their coverage. ECF No. 36 at ¶ 6. After receiving these letters from Plaintiffs and other crop producers, crop insurance providers contacted the Risk Management Agency requesting guidance on how to handle the APH Yield Exclusion elections concerning the 2015 winter wheat crop. *See* A.R. at 547–49. On October 31, 2014 the Risk Management Agency provided guidance that although it had authorized the APH Yield Exclusion for most crops for 2015, it did not authorize the APH Yield Exclusion for winter wheat. *See id.* at 562. Therefore, the Agency directed insurance providers to deny winter wheat producers' requests for the APH Yield Exclusion. *Id.*

Plaintiffs challenged the directive as an adverse decision appealable to NAD. *Id.* at 38–43. On January 12, 2015, the NAD Hearing Officer conducted a telephone hearing. *Id.* at 121–1395. On March 12, 2015, the NAD Hearing Officer issued a Determination that NAD did not have jurisdiction over the matter and did not reach the merits. *Id.* at 140-158. Plaintiffs then requested NAD Director Review of the Hearing Officer's Determination pursuant to 7 C.F.R. § 11.9. *Id.* at 160–212. On August 5, 2015, the NAD Director issued the "Director

Determination," which reversed the Hearing Officer's determination as to jurisdiction. *Id.* at 242–267. Additionally, the NAD Director held that the Risk Management Agency had discretion to determine the appropriate time to implement the APH Yield Exclusion with regard to 2015 winter wheat, effectively affirming the Agency's decision not to authorize the exclusion. *Id*. Plaintiffs timely appealed to this Court pursuant to 7 C.F.R. § 11.13(a).

## STANDARD OF REVIEW

Persons adversely affected by a decision of an agency within the USDA may appeal to the National Appeals Division. *See* 7 U.S.C. § 6996. An adverse NAD decision may be appealed to the NAD Director. *See id.* § 6998. Pursuant to 7 U.S.C. § 6999 and 7 C.F.R. § 11.13(a), the United States District Courts may review and enforce final determinations of NAD in accordance with Chapter 7 of Title 5 of the United States Code.

Under 5 U.S.C. § 706, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." Agency actions are presumed valid, and the burden of proof lies with plaintiffs who challenge such actions. *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008). Reviewing courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Nevertheless, the agency must examine the relevant

data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). An agency action is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.*

When an agency interprets its own ambiguous regulation, it is entitled to deference. *Auer v. Robbins*, 519 U.S. 452 (1997). However, when an agency interprets a statute, reviewing courts follow the two-step *Chevron* analysis to determine how much deference to afford the agency. *United States v. Mead Corp.*, 533 U.S. 218 (2001) (referencing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). First, Courts will assess whether Congress' intent is clear. Courts will not give an agency deference if "Congress has directly spoken to the precise question at issue," because it is the jurisdiction of neither courts nor agencies to question Congress' unambiguous intent. *Chevron*, 467 U.S. at 842–43.

If Congress' intent is not clear—in circumstances where the statute is silent or ambiguous—"the question for the court is whether the agency's answer is based on a permissible construction of the statute." *NISH v. Rumsfeld*, 348 F.3d 1263, 1266-67 (10th Cir. 2003) (citing *Chevron*, 467 U.S. at 843). In answering that question, courts defer to reasonable administrative interpretations and accord "considerable weight . . . to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron* at 844–45. "If a statute is ambiguous,

7

and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

## ANALYSIS

The sole issue in this case is whether NAD properly determined that the APH Yield Exclusion was not immediately available to Plaintiffs upon the passage of the Farm Bill but was instead subject to the Risk Management Agency's discretion as to the timing of implementation. Because NAD's decision was based on statutory interpretation, this Court will engage in the two-step *Chevron* analysis to determine how much deference to give NAD's determination. *See Mead Corp.*, 533 U.S. at 236.

Under *Chevron*, the Court's first task is to determine whether the statute is silent or ambiguous concerning the issue before the Court. 467 U.S. at 842–843. Pointing to the applicability provision, § 1508(g)(4)(A), Plaintiffs contend that there can be no reasonable dispute that Congress spoke directly to the issue of the APH Yield Exclusion's application to the 2015 crop year. ECF No. 36 at 5. Defendants concede that Congress spoke directly to the APH Yield Exclusion's application date and agree that it was "effective immediately." *Id.* at 13. However, Defendants argue that there is a difference between the date on which the APH Yield Exclusion became *effective* under the application provision (February 7, 2014) and the date on which the agency need *implement* the APH Yield Exclusion (a reasonable date in the future at the agency's discretion). *See id*. Defendants thus contend that the statute does not clearly speak

8

to when the APH Yield Exclusion need be implemented, and therefore the agency's interpretation that it could implement the APH Yield Exclusion at its discretion should be given deference.

Plaintiffs counter that Defendants' attempt to delineate the "application date" from an "implementation date" is nothing more than crafty legal gobbledygook. Plaintiffs contend that Congress did not explicitly address implementation in the APH Yield Exclusion, and therefore Congress intended it to be implicit within the "Application" provision. Accordingly, this case comes down to whether Congress intended that the APH Yield Exclusion's effective date as provided in § 1508(g)(4)(A) be distinct from its implementation date.

After reviewing the APH Yield Exclusion's "statutory language, the design of the statute as a whole and [] its object and policy," I conclude that Defendants' attempt to differentiate statutory effectiveness from implementation here is without merit. *Crandon v. United States*, 494 U.S. 152, 158 (1990). Therefore, the APH Yield Exclusion was a statutory benefit available to Plaintiffs for their 2015 winter wheat crop, and the agency's decision to deny them this benefit was not in accordance with the law. My reasoning is explained below.

### A. The Text.

Defendants argue that there is no express language within the statute mandating implementation by the 2015 crop year. ECF No. 37 at 11. Therefore, they argue that the statute "is not conclusive on whether it is self-executing." *Id.* at 16; *see also* Black's Law Dictionary 1566 (10th Ed. 2014) (defining self-executing as "effective immediately without the need of any type of implementing action.").

It is true that the APH Yield Exclusion does not include the word "implementation" or expressly denote an "implementation date." But this fact cuts in Plaintiffs' favor rather than Defendants'. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). "It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). There is no clear direction in this statute indicating that it would take effect other than on the date of its enactment. Congress's silence on the issue thus is not helpful to defendants' position here. *See id.*

Congress is experienced in providing that a statute be implemented on a date different than the effective date. For example, when Congress amended the FCIA in 2000, it made the amendments generally effective on the date of enactment but also made an exception in 14 provisions, where it explicitly allowed the agency flexibility in deciding when to implement the provisions. *See* Agricultural Risk Protection Act of 2000, Pub. L. No. 106–224, sec. 171, 114 Stat. 358 (note to 7 U.S.C. § 1501) (listing implementation dates other than the general effective date of "the beginning of the 2001 fiscal year," the "the beginning of the 2001 crop year," and the "the beginning of the 2001 reinsurance year"). But Congress did not insert any language into the APH Yield Exclusion indicating that it intended a separate implementation date. In accordance with *Gozlon-Peretz*, this Court views Congress' silence as an expression that Congress meant the APH Yield Exclusion to be immediately available to producers on the date the Farm Bill was signed into law. *Id.* at 404.

## B. Statutory Context and Legislative History.

Because this Court concludes that the text of the statute clearly and unambiguously decides the issue, it is unnecessary to analyze the statutory context and legislative history to decide the case. *See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93 (2007) (referencing *Chevron*, 467 U.S., at 842–43) ("[I]f the intent of Congress is clear and unambiguously expressed by the statutory language at issue, that would be the end of our analysis."). Nevertheless, I will briefly respond to Defendants' arguments concerning statutory context and legislative history.

Defendants argue that viewing the APH Yield Exclusion as immediately implementable cannot be squared with other FCIA requirements that the agency establish underwriting rules, use sufficient actuarial data before offering insurance coverage, and operate the crop insurance program in an actuarially sound manner. ECF No. 37 at 15 (referencing § 1508(g)(1), § 1508(a)(1), § 1506(n)). While immediate implementation of the APH Yield Exclusion undoubtedly created substantial logistical difficulties for the agency, the Court nevertheless must apply the statute as written. The *Adkins* court summarized this well:

> The administrative record reflects that the agency had much to do to prepare for the 2015 crop year, but that does not permit the Court to re-write the statute to permit the delay sought by the agency in this case. It is the role of Congress, not the courts, to write and enact statutory provisions. The Court's role is one of interpretation and enforcement, and in this instance, the Court [finds] legal error in the agency's decision with respect to the APH Yield Exclusion set out in § 1508(g)(4)(C).

*Adkins*, at *2.

Further, Defendants point to a few statements within the legislative history to support their contention that the APH Yield Exclusion was meant to be implemented on a date later than the effective date. ECF No. 37 at 16. The Court acknowledges that the legislative history cuts both ways in this case. However, courts turn to legislative history for guidance only if the text of the statute is ambiguous, and here it is not.

Based upon this Court's review of the plain text, I find that Congress directly spoke to the issue presented. The agency's decision to delay implementation of the APH Yield Exemption without clear Congressional direction constitutes legal error. The agency viewed Congressional silence as creating ambiguity, but this stands in direct opposition to *Gozlon-Peretz*'s binding precedent that silence with respect to an enactment date is a clear statement of immediate effectiveness. The APH Yield Exclusion should have been applied in time for Plaintiffs' 2015 winter wheat crop, and therefore Plaintiffs were wrongly denied a benefit to which they were entitled under § 1508(g)(4)(C).

## ORDER

The Court REVERSES the National Appeals Division Director's decision and REMANDS for proper application of the APH Yield Exclusion.

DATED this 13th day of October, 2017.

BY THE COURT:

_____
R. Brooke Jackson